# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAYNE MCCARTY, a minor, by and through his Guardian ad Litem, AMANDA McCARTY,<br><br>Plaintiffs,<br>vs.<br>UNITED STATES OF AMERICA et al.<br><br>Defendants. | CASE NO. 13cv1602-LAB (JLB)<br><br>**ORDER GRANTING MOTION FOR GOOD FAITH SETTLEMENT (DOCKET NO. 71)** |

In this case, Kayne McCarty sues for an injury arising from his contact with hot water in the bathroom of his family's residence. Defendant Rheem Manufacturing Co. has filed a motion for good faith settlement. (Docket no. 71.) Defendant Camp Pendleton & Quantico Housing, LLC (CPQH) objects. (Docket no. 82.)

**Background**

McCarty alleges that he was burned when "the hot water heater installed in the military housing quarters" where he lived "unleashed a scalding burst of water from the upstairs bathroom faucet." (Docket no. 21 at ¶ 1.) As a result, he suffered "second degree burns over twenty-percent of his lower body." (*Id.*) After the incident, an investigation allegedly revealed that the water reached temperatures above 160 degrees Fahrenheit. (*Id.* at ¶ 21.) CPQH allegedly managed, maintained, and operated the residence and Rheem allegedly manufactured the relevant hot water heater. (*Id.* at ¶¶ 23, 42.) McCarty alleges CPQH is

liable because it knew, or should have known, that the hot water heater was producing water at a dangerously hot temperature, but failed to take action to prevent injury. (*Id.* at ¶ 23.) McCarty alleges Rheem is liable because it manufactured a hot water heater that's dangerous when used in a reasonably foreseeable manner. (*Id.* at ¶¶ 29, 43.) McCarty alleged causes of action against Rheem for negligence, strict products liability, breach of warranty, and defective design. He alleges causes of action against CPQH for negligence and premises liability.

**Evidence of Fault**

Rheem contends its liability is minimal because (1) the hot water heater was manufactured in compliance with industry standards, (2) the hot water heater isn't defective and only McCarty's experts contend it is, (3) the user's manual and a label affixed to the water heater warns of the danger of hot water, (4) the McCartys ignored Rheem's warnings, and (5) after they shipped the hot water heater, someone turned its temperature control from "low" to "high." (Docket no. 71.) CPQH argues that Rheem understates its potential liability. It claims there's evidence that an alleged design defect allows the water heater to have a variance of 10 to 15 degrees Fahrenheit above the thermostat setting, and that "stacking"—a phenomenon caused by frequent small hot water uses—makes it possible for water temperature to rise an additional 20 to 30 degrees Fahrenheit. (Docket nos. 82 and 82-4 at 19.)

**Settlement**

McCarty and Rheem have reached a settlement. Under the settlement, Rheem will pay McCarty $250,000, without admission of fault, in exchange for a full release of McCarty's claims. (Docket no. 71.) They seek a determination of good faith and a bar of all claims for equitable indemnity and contribution against Rheem.

The Court initially expressed its concern over this proposed settlement. (*See* Docket no. 98 at 4 ("Based on McCarty's allegations, a reasonable jury could find that the water heater manufacturer is at least as liable for the injury as the facilities manager.").) The September 14, 2015 hearing on this matter, however, added context. McCarty and Rheem

contended, and CPQH didn't contest, that there's no evidence of frequent hot water use in the McCarty residence in the time period before the injury occurred. Thus, while stacking is the cornerstone of Rheem's alleged liability, there's no evidence to support the argument that stacking occurred here. CPQH's conduct also undermines its argument that Rheem's hot water heaters are defective—it hasn't removed the Rheem hot water heaters from the units it manages.

**Good Faith Settlement Standard**

Under California law, "[w]here a release . . . is given in good faith before . . . judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights," the release shall, among other things, "discharge the party to whom it is given from all liability for any contribution to any other parties." Cal. Code Civ. P. § 877.

To obtain a determination that it reached a settlement in good faith, "a settling party may give notice of settlement to all parties and to the court, together with an application for determination of good faith settlement." Cal. Code Civ. P. § 877.6(a)(2). Nonsettling parties are given an opportunity to contest the settlement. *Id.* If, after reviewing the application for determination of good faith settlement and any response thereto, the court determines the settlement was entered in good faith, "any other joint tortfeasor or co-obligor" is barred "from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." *Id.* § 877.6(c); *Tech-Bilt, Inc. v. Woodward-Clyde & Associates*, 38 Cal.3d 488, 494 (1985); *Fed. Sav. & Loan Ins. Corp. v. Butler*, 904 F.2d 505, 513 (9th Cir. 1990). The party asserting a lack of good faith has the burden of proof on that issue. Cal. Code Civ. P. § 877.6(d).

To meet the standard of "good faith," the amount of the settlement must be "within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries." *Tech-Bilt*, 38 Cal.3d at 499. In applying the reasonable-range test, courts may consider the following factors:

1. "a rough approximation of the plaintiffs' total recovery and a settlor's proportionate liability";

2. "the amount paid in settlement";

3. "a recognition that a settlor should pay less in settlement than if found liable after a trial";

4. "the allocation of settlement proceeds among plaintiffs";

5. "the financial conditions and insurance policy limits of settling defendants"; and

6. evidence of "collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants."

*Id.* A settlement is deemed to be reached in good faith so long as it's not so far "out of the ballpark" in relation to the foregoing factors "as to be inconsistent with the equitable objectives of the statute." *Id.* at 499-500.

**Discussion**

Certain *Tech-Bilt* factors are inapplicable here—i.e., the allocation of settlement proceeds among plaintiffs, Rheem's financial condition and insurance policy limits, and the existence of collusion, fraud, or tortious conduct. (*See* Docket no. 98 at 4.) The other factors point to the conclusion that the proposed settlement is reasonable. In light of the lack of evidence to substantiate stacking, it's reasonable to conclude that Rheem's proportionate liability is small. $250,000 is within the ballpark of Rheem's proportionate liability, especially when considering that a settling party should pay less in settlement than after trial. The settlement is not so "out of the ballpark" as to be unreasonable. Thus, Rheem's motion for good faith settlement (Docket no. 71) is **GRANTED**.

**IT IS SO ORDERED**.

DATED: September 18, 2015

*[signature: Larry A. Burns]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge